# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE: APPLICATION OF OPERADORA        Case No. **6:09-cv-383-Orl-22GJK**
DB MEXICO, S.A. DE C.V.,        (Case No. 6:08-mc-136-Orl-22GJK)

**Applicant.**

_____

# REPORT AND RECOMMENDATION

TO THE UNITED STATES DISTRICT COURT

       This cause came on for consideration without oral argument on the following motions

filed herein:

| | |
|---|---|
| **MOTION:** | **VERIFIED APPLICATION FOR ORDER DIRECTING HARD ROCK CAFE INTERNATIONAL TO RESPOND TO DISCOVERY (Doc. No. 1)** |
| **FILED:** | **December 10, 2008** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

| | |
|---|---|
| **MOTION:** | **HARD ROCK CAFÉ INTERNATIONAL (USA), INC.'S MOTION TO QUASH SUBPOENA FOR DEPOSITION DUCES TECUM ISSUED PURSUANT TO 28 U.S.C. § 1782 (Doc. No. 4)** |
| **FILED:** | **February 24, 2009** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED as moot**.

## I.    BACKGROUND

### A.    The Motion

On December 10, 2008, Operadora DB Mexico, S.A. DE C.V. ("Operadora"), an entity incorporated under the laws of Mexico, filed the present *ex parte* Verified Application for Order Directing Hard Rock Café International to Respond to Discovery (the "Motion" or the "Application").  Doc. No. 1.  According to the Application, Hard Rock Café International ("HRCI") is an entity incorporated under the laws of Florida and has its principal place of business in Orlando, Florida.  Doc. No. 1 at 4, 7.  Pursuant to 28 U.S.C. § 1782, Operadora seeks an order authorizing the issuance of a subpoena directed to HRCI for "narrowly tailored discovery" relevant to an International Chamber of Commerce's (the "ICC") International Court of Arbitration  proceeding in Mexico City, Mexico (the "Arbitration").  Doc. No. 1 at 1, 5, 12.  Operadora attaches the proposed subpoena, discovery request, and the ICC's Rules of Arbitration (the "Rules") to the Motion.  Doc. Nos. 1-3, 1-4.

On February 6, 2009, the undersigned originally granted the Application.  Doc. No. 2.  On February 24, 2009, HRCI filed a Motion for Reconsideration arguing that the undersigned lacked jurisdiction to enter the order and the order was improvidently granted *ex parte*.  Doc. No. 3.  On May 22, 2009, the undersigned granted the Motion for Reconsideration, vacated the prior order, quashed the subpoena that had been issued, and directed the Clerk to reactivate the Application for the issuance of the instant Report and Recommendation.  Doc. No. 14.[1]

---

[1] Because the Court has quashed the earlier subpoena (Doc. No. 14), HRCI's Motion to Quash same (Doc. No. 4) will be denied as moot.

In the Application, Operadora states that the Arbitration concerns a dispute over a franchise agreement. Doc. No. 1 at 1. The parties to the Arbitration are Operadora and Hard Rock Limited, a Jersey Channel Islands corporation. *Id*. at 1-2. The franchise agreement and the dispute concerns the exclusive franchise rights for the "Hard Rock" brand in Mexico. *Id*. at 1. Both Operadora and Hard Rock Limited claim the exclusive franchise rights for the "Hard Rock" brand in Mexico. *Id*. HRCI is not a party to the Arbitration, but Operadora alleges that "many of Operadora's communications and transations [sic] regarding its franchise rights have been with HRCI." *Id*. at 2. "These include Operadora's payment of royalties, participation in audits and general correspondence." *Id*. Operadora maintains that the arbitrator has no jurisdiction over HRCI and, therefore, no authority to compel HRCI to produce documents relevant to the dispute. *Id*. at 2. Thus, Operadora seeks an order under 28 U.S.C. § 1782 allowing it to issue the subpoena for deposition duces tecum. *Id*.[2]

**B.    The Motion to Quash**

As set forth above, on February 24, 2009, HRCI filed two largely identical motions, a Motion for Reconsideration and a Motion to Quash Subpoena For Deposition Duces Tecum

---

[2] The subpoena duces tecum seeks the following:

    (1) Any and all documents which relate to, describe, summarize, constitute, or mention, the holder of any rights under the Master Franchise Agreement from January 1, 1994 to the present;

    (2) Any and all non-privileged documents which relate to, describe, summarize, constitute, or mention, in whole or in part, any royalties or payments made to Hard Rock Limited pursuant to the Master Franchise Agreement from January 1, 1994 to the present;

    (3) Any and all documents which relate to . . . internal communications between [HRCI] or Hard Rock Limited employees, agents, attorneys, or representatives pertaining to Operadora's rights, or lack thereof, under the Mater [sic] Franchise Agreement from January 1, 1994 to the present;

    (4) Any and all documents which relate to . . . communications between Hard Rock Limited and any third party pertaining to Operadora's rights, or lack thereof, under the Master Franchise Agreement from November 20, 2006 to the present;

    (5) Any and all documents which relate to . . . communications and agreements between Hard Rock Limited and any third party, [as to] franchise rights for hotels in Mexico under the "Hard Rock" brand from November 20, 2006 to the present.

Doc. No. 1-3 at 4.

Issued Pursuant to 28 U.S.C. § 1782 (the "Motion to Quash"). Doc. Nos. 3-4. Because the undersigned vacated the prior order, the Motion to Quash is, in effect, a response in opposition to the Application. *See* Doc. Nos. 2, 13.

In the Motion to Quash, HRCI maintains that the ICC arbitration is in its early stages and that the first meeting did not occur until February 19, 2009. Doc. No. 4 at 2. HRCI argues that the Application should be denied for the following four reasons:

> First, 28 U.S.C. § 1782 does not apply to private arbitrations, such as the underlying ICC arbitration; second, [Operadora's] application seeks to circumvent the proof gathering restrictions of the ICC; third, [Operadora's] requested subpoena is unduly intrusive and burdensome; and fourth, this Court should exercise its discretion to deny [Operadora's] application because it acted surreptitiously, disingenuously and is actively challenging the very competence and authority of the arbitral panel which is the purported predicate under 28 U.S.C. § 1782.

Doc. No. 4 at 7.

1. Tribunal

HRCI maintains that the Second and Fifth Circuits have held that an ICC arbitration is a private arbitration and not a "foreign or international tribunal" under 28 U.S.C. § 1782. Doc. No. 4 at 8-9 (citing *National Broadcasting Company, Inc. v. Bear Sterns & Co., Inc.*, 165 F.3d 184, 186-91 (2d Cir. 1999); *Republic of Kazakhstan v. Biedermann International*, 168 F.3d 880, 883 (5th Cir. 1999)). The decisions of the Second and Fifth Circuits came down prior to the United States Supreme Court's seminal opinion in *Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), but HRCI maintains that *Intel* did not determine the precise issue of whether a private arbitration can qualify as a "foreign or international tribunal" under 28 U.S.C. 1782. Doc. No. 4 at 10. HRCI maintains that the district courts that have considered the issue

since *Intel*, 542 U.S. 241 (2004) are divided.  Doc. No. 4 at 10 (citing *La Comision Ejecutiva Hidro-Elecctrica Del Rio Lempa v. El Paso Corporation*, 2008 WL 5070119 at *4-6 (S.D. Tex. Nov. 20, 2008) (holding private arbitration is not a foreign or international tribunal); *In re Application of Babcock Borsig AG*, 583 F.Supp.2d 233, 238-39 (D. Mass. 2008) (holding ICC arbitration is a "first instance decision maker" which issues a dispositive ruling and, thus, is included as a foreign or international tribunal); *In re Application of Hallmark Capital Corporation*, 534 F.Supp.2d 951, 952 (D. Minn. 2007) (holding private Israeli arbitration proceeding qualified as a foreign or international tribunal); *In re Application of Roz Trading LTD.*, 469 F.Supp.2d 1221, 1224-28 (N.D. Ga. 2006) (holding international commercial arbitral body located in Austria was a tribunal within the meaning of 28 U.S.C. § 1782)).  Thus, HRCI asserts that this Court should follow the decisions of the Second and Fifth Circuits and deny the Application.  Doc. No. 4 at 10-12.

2.  ICC Discovery Restriction

HRCI maintains that while the *Intel* opinion held that there is no requirement under 28 U.S.C. § 1782 that the requested discovery be available under the discovery rules of the foreign tribunal, a district court may consider whether the discovery request "conceals an attempt to circumvent foreign proof gathering restrictions."  Doc. No. 4 at 12 (quoting *Intel*, 542 U.S. at 264-65).  HRCI argues that the arbitration proceeding has just commenced and Operadora has yet to seek any of the requested discovery through the ICC proceeding.  Doc. No. 4 at 13.  Thus, HRCI asserts that the Court should defer to the ICC and deny the Application.  *Id.*

3. <u>Unduly Intrusive and Burdensome</u>

HRCI maintains that *Intel* provides a district court with the discretion to reject an application if the requested discovery is "unduly intrusive or burdensome." Doc. No. 4 at 13 (quoting *Intel*, 542 U.S. at 265). HRCI argues that the discovery sought is intrusive into its business operations. *Id*. Specifically, HRCI argues that Request No. 3 (*see* supra n. 2) is intrusive because it has no bearing on the ultimate issues before the ICC panel and merely seeks to obtain private communications between HRCI and Hard Rock Limited that occurred after the underlying agreements were executed. Doc. No. 4 at 13-14.

Regarding Request Nos. 4 and 5 (*see* supra n. 2), HRCI states the following:

> [The Requests] seek to discover documents related to the possible licensing of the "Hard Rock" brand in Mexico since November 20, 2006. Since the ICC arbitration only concerns a construction of the scope of [Operadora's] rights under the operative agreement in the "Hard Rock" brand in Mexico, these requests clearly constitute an intrusive "fishing" expedition. The only purpose in seeking this discovery is not to address any issue in the arbitration but rather to ascertain confidential and proprietary business information in the possession of [HRCI] relating to potential and future business opportunities in Mexico. [Operadora's] motivation is manifest: it seeks this information to gain a competitive advantage.

Doc. No. 4 at 14. Thus, HRCI states that the Court should deny the Application. *Id*. HRCI does not specifically address any of the other discovery requests in the Application (*see* supra n. 2). *Id*.

### 4.   Surreptitious and Disingenuous

HRCI asserts that Operadora's conduct "has been, at all times, surreptitious, disingenuous and in direct conflict of its own position in the ICC arbitration."  Doc. No. 4 at 14.  HRCI maintains that Operadora failed to notify the ICC panel of the Application until after an order from the undersigned was originally entered.  Doc. No. 4 at 14.  Moreover, HRCI argues that Operadora has been disingenuous because: 1) it did not inform the Court about the early stages of the arbitration; 2) it did not inform the ICC or Hard Rock Limited of the Application; 3) it did not first seek the discovery at issue from the ICC panel; and 4) it did not inform the Court that it was challenging the jurisdiction of the ICC panel.  Doc. No. 4 at 15.  Thus, HRCI argues that the Court should exercise its discretion under *Intel*, 542 U.S. at 264, and deny the Application.

### C.      The Response

On March 10, 2009, Operadora filed a response to the Motion to Quash (the "Response").  Doc. No. 9.  Operadora argues that the Court should deny the Motion to Quash because the Application is appropriate under 28 U.S.C. § 1782 and the discovery sought in the subpoena is "facially relevant and substantively applicable to the arbitration proceeding between Operadora and Hard Rock Limited. . . ."  Doc. No. 9 at 2.  Operadora maintains that an application through 28 U.S.C. § 1782 is necessary because HRCI is not a party to the arbitration and the ICC has no jurisdiction over the Florida corporation.  Doc. No. 9 at 6.  Under *Intel*, 542 U.S. at 261, Operadora asserts that the discovery process of the ICC is immaterial to the analysis of the Application. Doc. No. 9 at 6 ("HRCI's protests that Operadora has not initiated discovery proceedings in the Mexico City Arbitration, or that the arbitral panel might not be receptive to the discovery obtained from the Subpoena are immaterial.").  Moreover, Operadora maintains

that neither the rules governing the ICC or 28 U.S.C. § 1782 contain any requirement that Operadora notify the panel and the opposing party that Operadora was seeking discovery from a third party in a foreign court.  *Id.*

In the Response, Operadora argues that Request No. 1 (*see* supra n. 2) is not unduly intrusive or burdensome.  Doc. No. 9 at 7.  Request No. 1 seeks any and all documents relating to the holder of any rights under the Master Franchise Agreement.  *See* supra n. 2.  Operadora states that in the arbitration proceeding, Hard Rock Limited has asserted that Operadora has no franchise rights and, therefore, HRCI cannot reasonably contend that Request No. 1 is intrusive and burdensome.  Doc. No. 9 at 7.   Regarding Request No. 2 (*see* supra n. 2), which seeks all non-privileged documents held by HRCI showing royalties or other payments to Hard Rock Limited under the Master Franchise Agreement, Operadora argues the discovery will demonstrate Hard Rock Limited's acceptance of payments from Operadora under the agreement.  Doc. No. 9 at 8.  Thus, Operadora argues that Request No. 2 is relevant to the arbitration and not unduly burdensome or intrusive.  *Id.*

Regarding Request No. 3 (*see* supra n. 2), which seeks documents pertaining to internal communications between HRCI and Hard Rock Limited from January 1, 1994 to the present, Operadora argues that the request is narrowly tailored in time and scope. Doc. No. 9 at 8.  Operadora argues that HRCI has communicated with Operadora and its predecessors about their franchise rights under the Master Franchise Agreement for many years.  *Id.*  Thus, Operadora maintains that Request No. 3 will show that HRCI and Hard Rock Limited have acknowledged

Operadora's rights under the agreement. *Id.*[3]

Regarding Request Nos. 4 and 5 (*see* supra n. 2), which seeks documents pertaining to communications between Hard Rock Limited and any third party regarding Operadora's rights under the Master Franchise Agreement or any other third parties' rights to the "Hard Rock" brand in Mexico, Operadora maintains that it is only seeking documents showing that Hard Rock Limited has acknowledged Operadora's franchise rights to third parties. Doc. No. 9 at 9. Operadora argues that these requests are not seeking to obtain any confidential or proprietary business information relating to potential and future business opportunities in Mexico. *Id.* To that end, Operadora states that pursuant their Local Rule 3.01(g) conference, Operadora has agreed to allow HRCI to redact the names of any third parties to alleviate HRCI's concerns about unfair competitive advantages. *Id.* Thus, Operadora asserts that each request is relevant to the arbitration and HRCI has failed to make a specific showing that the requested discovery would be unduly burdensome. *Id.* at 9-10.

### D.     The Reply

On April 7, 2009, HRCI filed a reply (the "Reply) to the Response. Doc. No. 12. In the Reply, HRCI argues that the time frame of the requests is a fifteen-year period and is *per se* unreasonable, burdensome and intrusive. Doc. No. 12 at 6 (citing *In re Ex Parte Application of Apotex Inc.*, 2009 WL 618243 at *3 (S.D. N.Y. March 9, 2009) (holding that a discovery request under 28 U.S.C. § 1782 which sought documents dating back nearly thirty years was unduly intrusive and burdensome)). Attached to the Reply is the sworn declaration of the Senior Director of Business Affairs for HRCI, Rebecca L. Roby, which states that HRCI has undergone

---

[3] Pursuant to a Local Rule 3.01(g) conference, Operadora states that it has agreed that HRCI, subject to the production of a privilege log, need not produce documents protected by the attorney-client privilege. Doc. No. 9 at 8 n. 3.

two changes in ownership over the past fifteen years. Doc. No. 13 at ¶ ¶ 1-2. According to Ms.

Roby, due to the changes in ownership, HRCI's document retention policies have changed many

times during the relevant time period. *Id*. at ¶ 3. Ms. Roby also states the following:

> Recently, in the course of other litigation, [HRCI] was required to produce its electronic communications for a number of years. In the course of this production effort, [HRCI] determined that e-mails prior to November, 2007, were not readily searchable or accessible. Rather, such pre-November, 2007 emails were retained on yearly archival tapes which were laborious and cumbersome to search. As a consequence, these raw archival data tapes were provided to the opposing party in the referenced litigation which had to expend tens of thousands of dollars to search these archival tapes for relevant information.
>
> Currently, [HRCI] has a multi-faceted corporate policy regarding the retention of non-electronic documents. As it pertains to [Operadora's] extensive request for documents regarding past royalty payments, [HRCI] has no documents prior to 2004.
>
> Given the extended timeframe of [Operadora's] requests, [HRCI] is doubtful that it will have many responsive documents.
>
> Putting aside the electronic communications, [HRCI] anticipates that it will require at least 10-20 manpower days to conduct a proper review of [HRCI's] files to respond to [Operadora's] requested categories of documents. This would place an undue burden upon the resources of [HRCI] insofar as it does not have regular staff available to commit to such a project. Instead, [HRCI] would have to employ existing staff who are already fully committed to other corporate responsibilities, thus diverting their time and efforts to comply with the requested categories of documents.

Doc. No. 13 at ¶¶ 5-8. In the Reply, HRCI concludes that the requested documents are of

"dubious relevance" to the issues before the ICC and amount to "little more than a massive

fishing expedition." Doc. No. 12 at 7. The Reply is the first time HRCI raised a specific

objection about the burden of providing electronic discovery.

The Application and the Motion to Quash, to the extent it is construed as a response in opposition to the Application, are presently before the undersigned for a Report and Recommendation. *See* Doc. No. 15.

## II.    THE LAW

Section 1782 of Chapter 28, United States Code, states:

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
>
> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.
>
> (b) This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.

28 U.S.C. § 1782.  "Applications pursuant to the [28 U.S.C. § 1782] are appropriately and routinely made *ex parte*."  *In re Letters Rogatory From the Tokyo District, Tokyo, Japan*, 539

F.2d 1216, 1219 (9th Cir. 1976). *See e.g.*, *In re Application of Michael Wilson & Partners, Limited*, Case No. 6:08-mc-64-31DAB, 2008 WL 32929136 *1 (M.D. Fla. Aug. 21, 2008); *Al Fayed v. Central Intelligence Agency*, 229 F.3d 272, 273 (D. D.C. 2000); *In re Application of Hallmark Capital Corporation*, 534 F.Supp.2d 951, 952 (D. Minn. 2007). The Eleventh Circuit has held:

> A district court has the authority to grant an application for judicial assistance if the following statutory requirements in § 1782(a) are met: (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*In re Patricio Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007).

The seminal case interpreting 28 U.S.C. § 1782, is *Intel Corporation v. Advanced Micro Devices*, 542 U.S. 241 (2004). In *Intel*, the United States Supreme Court did not, however, directly address whether private international arbitration proceedings are "tribunals" within the meaning of the statute. *Id*. The United States District Court for the Northern District of Georgia has held that "[a] finding that an arbitral panel . . . is a 'tribunal' within the meaning of § 1782(a) is consistent with the reasoning in *Intel*." *In re Application of Roz Trading, LTD.*, 469 F.Supp.2d. 1221, 1224-25 (N.D. Ga. 2006). In so holding, the Court conducted the following analysis:

> In *Intel*, the Supreme Court held that the Directorate-General of Competition for the Commission of the European Communities ("DG-Competition") was a "tribunal" within the meaning of § 1782(a). This body "is the European Union's primary antitrust law enforcer." *Id*. at 250, 124 S.Ct. 2466. The DG-Competition accepts

antitrust complaints and conducts preliminary investigations. *Id*. at 254, 124 S.Ct. 2466. The DG-Competition's decisions are "subject to review in the Court of First Instance and the European Court of Justice." *Id*. at 255, 124 S.Ct. 2466.

The Supreme Court's reasons for finding the DG-Competition to constitute a "tribunal" in that case are instructive. The Supreme Court began by restating its firmly held principle that "in all statutory construction cases, we begin ... with the language of the statute." *Id*. quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). The Supreme Court began its statutory construction by noting that, in a 1964 amendment to § 1782, "Congress deleted the words 'in any judicial proceeding pending in any court in a foreign country,' and replaced them with the phrase 'in a proceeding in a foreign or international tribunal.'" *Intel*, 542 U.S. at 248-49, 124 S.Ct. 2466 (citations omitted). The Supreme Court also observed: "Congress understood that change to provide the possibility of U.S. judicial assistance in connection with administrative and quasi-judicial proceedings." *Id*. at 258, 124 S.Ct. 2466 (internal quotation omitted). <u>The Supreme Court stated expressly, albeit in dicta: "[T]he term 'tribunal' ... includes investigating magistrates, administrative and arbitral tribunals</u>, and quasi-judicial agencies, as well as conventional ... courts." *Id*., quoting Hans Smit, *Int'l Lit. Under the United States Code*, 65 Colum. L.Rev. at 1026-27 (1965) (emphasis added).

In considering the status of the DG-Competition, the Supreme Court found that § 1782(a) "authorizes, but does not require, a federal district court to provide assistance to a complainant in a European Commission proceeding that leads to a dispositive ruling, i.e., a final administrative action both responsive to the complaint and reviewable in court." *Id*. at 255, 124 S.Ct. 2466. The Court also reasoned that the DG-Competition "is a § 1782(a) 'tribunal' when it acts as a first-instance decisionmaker." *Id*. at 247, 124 S.Ct. 2466. That is, the Supreme Court found the DG-Competition to constitute a § 1782(a) tribunal to the extent that it acted as a first-instance decisionmaker, capable of rendering a decision on the merits, and as part of the process that could ultimately lead to final resolution of the dispute.

<u>A finding that an arbitral panel of the Centre is a "tribunal" within the meaning of § 1782(a) is consistent with the reasoning in *Intel*</u>. Although *Intel* did not expressly hold arbitral bodies to be

"tribunals," it quoted approvingly language that included "arbitral tribunals" within the term's meaning in § 1782(a). The Supreme Court also determined the DG-Competition to constitute a "tribunal" when it acted as a first-instance decision maker in a proceeding "that leads to a dispositive ruling, i.e., a final administrative action both responsive to the complaint and reviewable in court." *Id*. at 255, 124 S.Ct. 2466. The Centre's arbitral panels are similarly "first-instance decision maker[s]" that issue decisions "both responsive to the complaint and reviewable in court." Respondent does not dispute that the Centre "is constituted to hear disputes, weigh evidence, and issue rulings that will finally bind the parties in accordance with its Rules ..." (Memorandum of Law in Support of Pet.App. at 11.) Respondent also does not dispute that the Centre's orders "are enforceable in Austrian courts ..." (*Id*.) The Centre, when examined under the same functional lens with which the Supreme Court in Intel examined the DG-Competition, must necessarily be considered a "tribunal" under § 1782(a).

*Roz Trading*, 469 F.Supp.2d at 1224-25 (emphasis added). On October 30, 2008, in *In re Application of Babcock Borsig AG*, 583 F.Supp.2d 233, 238-40 (D. Mass. 2008), the United Stated District Court for the District of Massachusetts held that the ICC qualifies as a tribunal under 28 U.S.C. § 1782. *Id*. The Court stated the following:

The Court in *Intel* did not directly address whether private arbitral bodies like the ICC qualify as "tribunals" under § 1782(a). But the Court's reasoning and dicta strongly indicate that these types of adjudicative bodies also fall within the statute. The ICC, like the European Commission, is a "first-instance decisionmaker" that conducts proceedings which lead to a dispositive ruling. The parties agree that the ICC has the authority to hear the dispute between BBAG and Hitachi, to weigh evidence, and to issue a decision that is binding on the parties. Furthermore, the term "tribunal," which was added to § 1782(a) in 1964 to broaden the statute's scope, is commonly used and understood to describe arbitral bodies. *See In re Roz Trading Ltd.*, 469 F.Supp.2d 1221, 1225-26 (N.D.Ga.2006) (collecting cases and authorities). In fact, in discussing the meaning of the term "tribunal" under § 1782(a), the Court in *Intel* favorably quoted an article by Professor Smit for the proposition that "[t]he term 'tribunal' ... includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial

agencies, as well as conventional civil, commercial, criminal, and administrative courts." *Id*. at 258, 124 S.Ct. 2466 (alteration in original) (emphasis added) (quoting Hans Smit, *International Litigation Under the United States Code*, 65 Colum. L.Rev. 1015, 1026-27 (1965)). Although this quotation in *Intel* is as a formal matter dicta, its considered inclusion offers meaningful insight regarding the Supreme Court's view of arbitral bodies in the context of § 1782(a).

. . .

Hitachi and BPI rely primarily on pre- *Intel* cases that concluded that private arbitral bodies were not "tribunals" under § 1782(a). In *National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184, 191 (2d Cir.1999), the Second Circuit held that a commercial arbitration in Mexico under the auspices of the ICC was not within the scope of § 1782(a). After finding the language of § 1782 to be ambiguous, the court analyzed the statute's legislative history and concluded that "Congress did not intend for [§ 1782] to apply to an arbitral body established by private parties." *Id*. Similarly, in *Republic of Kazakhstan v. Biedermann International*, 168 F.3d 880, 883 (5th Cir.1999), the Fifth Circuit held that § 1782 was "not intended to authorize resort to United States federal courts to assist discovery in private international arbitrations." In both *National Broadcasting Co.* and *Republic of Kazakhstan*, the courts expressed concern that if § 1782(a) were read to include private arbitral bodies, the statute might conflict with the Federal Arbitration Act ("FAA"), which provides much more restricted discovery options in the context of domestic arbitration actions. *See Nat'l Broadcasting Co.*, 165 F.3d at 187; *Republic of Kazakhstan*, 168 F.3d at 882-83.

. . .

I do not find the reasoning in *National Broadcasting Co.* and *Republic of Kazakhstan* to be persuasive, particularly in light of the subsequent Supreme Court decision in *Intel*. As described above, the Court in *Intel* emphasized Congress's intent to expand the applicable scope of § 1782(a). The Court noted Congress's use of the broad term "tribunal," and it favorably quoted Professor Smit's definition of the term, which expressly included "arbitral tribunals." *Intel*, 542 U.S. at 258, 124 S.Ct. 2466. There is no textual basis upon which to draw a distinction between public and private arbitral tribunals, and the Supreme Court in *Intel* repeatedly refused to place "categorical limitations" on the availability of § 1782(a). *Id*. at 265, 124 S.Ct. 2466. Further, the Court in *Intel*

expressly rejected the argument that an applicant under § 1782(a) "must show that United States law would allow discovery in domestic litigation analogous to the foreign proceeding," thus obviating the need for concern about inconsistencies between § 1782 and the FAA. *Id*. at 263, 124 S.Ct. 2466. The *Intel* Court explained that § 1782 is primarily intended for the assistance of foreign tribunals, and it does not require United States courts to engage in any comparative analysis vis-a-vis domestic proceedings. *Id*.

*In re Application of Babcock Borsig AG*, 583 F.Supp.2d 233, 238-40 (D. Mass. 2008) (emphasis added).

In *Intel*, the United States Supreme Court held that 28 U.S.C. § 1782, does not contain any requirement that an applicant must first seek discovery in the foreign tribunal or that the foreign tribunal allow for the discovery sought before bringing an application in the district court. 542 U.S. at 252-53; *see also In the Matter of the Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) ("We find nothing in the text of 28 U.S.C. § 1782 which would support a quasi-exhaustion requirement. . . ."). However, once the statutory factors are met, the Court in *Intel* identified other factors a court should considering when determining an application under 28 U.S.C. § 1782:

> First, when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. . . . In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid. . . . Second . . ., a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance. . . . Specifically, a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies

of a foreign country or the United States. Also, unduly intrusive or
burdensome requests may be rejected or trimmed.

*Id*. at 264-65.

## III.    APPLICATION

### A.  Statutory Factors

Operadora, as a party to the Arbitration proceeding, is clearly an "interested person"
under the statute; the Application seeks evidence, both testimonial and documentary; and HRCI
is a resident of this district.  *See Clerici*, 481 F.3d at 1331.  Therefore, the undersigned
recommends that the Court find that Operadora has met the first three requirements under the
statute.  *Id*.  The only remaining statutory factor for the Court to determine is whether the
arbitration proceeding is a "tribunal" under the statute.  *Id*.

In the Application, Operadora states that the International Court of Arbitration was
founded "'for the specific purpose of providing for the resolution of international business
disputes by means of conciliation and arbitration.'" Doc. No. 1 at 8 (quoting Eric A. Schwartz,
*The Resolution of International Commercial Disputes under the Auspices of the ICC
International Court of Arbitration*, 1995 Hastings Law Rev. 719).  Operadora maintains that the
arbitrator has "'broad powers to investigate relevant facts.'" *Id*.  The ICC's Rules (the "Rules"),
attached to the Application, state "[a]ll disputes arising out of or in connection with the present
contract shall be finally settled. . . ."  Doc. No. 1-4 at 3.  Moreover, Article 20 of the Rules
provides that the Arbitration panel "shall proceed within as short a time as possible to establish
the facts of the case by all appropriate means."  Doc. No. 1-4 at 12.  "Every Award shall be
binding on the parties."  Doc. No. 1-4 at 14.  HRCI has not disputed any of these facts, but
simply requests that the Court follow the Second and Fifth Circuit precedent that private

arbitrations are not tribunals under the statute.  Doc. No. 4 at 7-12 (citing *National Broadcasting Company, Inc.*, 165 F.3d 184 (2d Cir. 1999); *Biedermann*, 168 F.3d 880 (5th Cir. 1999)).

The undersigned recommends that the Court find that the Rules cloak the arbitrator with the authority of a first-instance decisionmaker which will lead to a dispositive ruling on the merits of the dispute.  *See Intel*, 542 U.S. at 255; *Roz Trading*, 469 F.Supp.2d at 1224-25.  Moreover, the undersigned recommends that the Court find the analysis set forth above in *Babcock*, 583 F.Supp.2d 233, 238-40, and *Roz Trading*, 469 F.Supp.2d at 1224-25, is more in line with *Intel* than the pre-*Intel* decisions of the Second and Fifth Circuits.  Thus, the undersigned recommends that the Court find that the ICC arbitration in Mexico City, Mexico, is a "tribunal" under the 28 U.S.C. § 1782.

### B.  Other *Intel* Factors

HRCI is not party to the arbitration proceeding and is outside the jurisdiction of the ICC.  As such, the undersigned recommends that the Court find HRCI arguments that Operadora is seeking to circumvent the ICC's proof gathering restrictions or policies and Operadora should have first sought discovery through the ICC are without merit.  *See* supra p. 5-7.  Thus, the only remaining factor is whether the discovery sought is unduly intrusive or burdensome.  *See Intel*, 542 U.S. at 264-65.  The undersigned recommends that the Court find the discovery requests (*see* supra n. 2), with the exception of Request No. 5, are all factually and substantively relevant to the arbitration proceeding.

Rule 26(b)(2)(C), Federal Rule of Civil Procedure, provides the Court with the discretion to limit discovery requests if such a request is unduly burdensome, unreasonably cumulative, or overbroad.  *Id.*  Request No. 5 seeks any and all documents pertaining to communications and

agreements Hard Rock Limited any third party concerning franchise rights for hotels in Mexico under the "Hard Rock" brand. *See* supra n. 2. Hard Rock Limited and Operadora both claim to hold the exclusive franchise rights to the "Hard Rock" brand in Mexico and, therefore, communications between Hard Rock Limited and third parties about said franchise rights is likely, but not relevant to the issue who owns the rights to the brand under franchise agreement. Therefore, the undersigned recommends that the Court find Request No. 5 is overbroad and not relevant to the issues before the Arbitration.

Because the original franchise agreement was executed in 1988, the undersigned recommends that Court find the time frame of the discovery requests is not unduly intrusive or burdensome. *See* Doc. No. 1 at 2. The undersigned also recommends that the Court find ten to twenty manpower days to find and locate the requested discovery is not unreasonable, unduly intrusive or burdensome given the magnitude of the dispute between the parties to the Arbitration. *See* supra p. 10.

**E. E-Discovery Issues**

Through the affidavit of Ms. Roby, HRCI has made a preliminary showing that discovery of archived electronic communications may be costly and unduly burdensome. *See* supra p. 10. HRCI states it has been ordered to produce archived data in other unrelated litigation and that the opposing party incurred substantial costs in connection with searching same for relevant information. Doc. No. 13 at ¶¶ 5-8.

Rule 34, Federal Rules of Civil Procedure permits the requesting party to "specify the form or forms in which electronically stored information will be produced." Fed.R.Civ.P. 34(b)(1)(C). If the requesting party fails to specify the form requested, Rule 34 requires the

responding party to "state the form or forms it intends to use." Fed.R.Civ.P. 34(b)(2)(D). Operadora did not request a specific form or forms and HRCI did not state which form or forms in which it will produce said discovery.

There are many options available to the Court in managing requests for electronically stored information ("ESI") that is archived, including, but not limited to, the implementation of a detailed and appropriately tailored discovery plan, ordering deposition(s) of personnel with the most knowledge of HRCI's electronic data storage, retrieval, and search capabilities, and/or shifting the costs of discovery to the requesting party. As set forth above, HRCI, through Ms. Roby's affidavit, raises electronic discovery issues for the first time in the Reply. *See* supra p. 10. Generally, the Court will not consider new arguments raised for the first time in a reply brief. *See Ramos v. Hoyle*, 2008 WL 5381821 at *3 (S.D. Fla. Dec. 19, 2008). To the extent HRCI has documents readily available in electronic format or otherwise, as Ms. Roby's affidavit indicates, HRCI should produce those documents pursuant to the subpoena. *See* Doc. No. 13 at ¶¶ 5-8. Regarding the archived ESI, the undersigned recommends that the Court find that based on the submissions of the parties, it is premature to resolve that issue. Therefore, the undersigned recommends that the Court order the parties to immediately conduct a good faith conference in an effort to resolve their dispute about archived ESI. The good faith conference shall include the following:

> ➢ A good faith disclosure of the archived data by HRCI, including the medium on which the archived data is stored, the volume of the archived data, the practicability of searching the archived data for responsive data, the likely costs associated therein, and any other pertinent information available to HRCI regarding the most practical

means and methods of facilitating a prompt and cost efficient search of the archived data files for information responsive to the subpoena;

➢ Each party shall have IT personnel or individual(s) with expertise or specialized knowledge in the mechanics and likely costs of such data extraction at the good faith conference;

➢ After HRCI's disclosure, the parties shall jointly evaluate the costs associated with discovery of responsive archival data versus the need for said data at the Arbitration; and

➢ The parties shall make a good faith effort to agree upon a resolution of the archived data discovery dispute without the Court's involvement.

If the parties are unable to agree to reach agreement on the archived data they may seek appropriate relief from the Court.

## VI.   CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that the Court:

(1) **GRANT** the Application (Doc. No. 1) with the exception that Request No. 5 (*see* supra n. 2) be **DENIED**;

(2) Authorize the Clerk to issue the attached subpoena (Doc. No. 1-3) **with the exception of Request No. 5 which shall be deleted from the subpoena** (*see* supra n. 2);

(3) **DENY as moot** the Motion to Quash (Doc. No. 4); and

(4) Direct the parties to immediately confer in a good faith effort to agree upon a resolution of their dispute regarding archived ESI in accordance with the instructions set forth above.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Recommended** in Orlando, Florida on May 28, 2009.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record