# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE: APPLICATION OF OPERADORA
DB MEXICO, S.A. DE C.V.,

**Case No.  6:09-cv-383-Orl-22GJK**

**Applicant.**

_____

## ORDER

This cause comes before the Court for consideration of Magistrate Judge Gregory J. Kelly's May 28, 2009 Report and Recommendation ("R&R") (Doc. No. 16), the Objections thereto (Doc. No. 17) filed by Respondent Hard Rock Cafe International ("HRCI") on June 11, 2009, and the Response to HRCI's Objections (Doc. No. 22), filed by Applicant Operadora DB Mexico, S.A. DE C.V. ("Operadora").  After reviewing the parties' submissions and hearing argument on the R&R and HRCI's objections at the July 22, 2009 hearing, the Court enters this Order.

This case arises under 28 U.S.C. § 1782, which permits a district court to order discovery for use in a "proceeding in a foreign or international tribunal."  § 1782(a).  The primary question presented is whether a private arbitral tribunal (the "ICC Panel") constituted under the International Chamber of Commerce International Court of Arbitration ("ICC Court") qualifies as a foreign or international tribunal.  Judge Kelly recommended that this Court find that the ICC Panel is a foreign or international tribunal under § 1782 and that the applicant, Operadora, is entitled to the discovery order it seeks.  The respondent, HRCI, argues that the ICC Panel is not a foreign or international tribunal and that Operadora is not entitled to discovery assistance under § 1782.

# I. BACKGROUND

Operadora and Hard Rock Limited are parties to a private arbitration proceeding in Mexico (the "Arbitration"). The Arbitration is being conducted under the auspices of the ICC Court. Hard Rock Limited initiated the Arbitration against Operadora to resolve a dispute over franchise rights. HRCI is not a party to the Arbitration, but is an affiliate of Hard Rock Limited.

On December 10, 2008, Operadora filed its *ex parte* Verified Application for Order Directing HRCI to Respond to Discovery (the "Application") (Doc. No. 1). According to the Application, HRCI is an entity incorporated under the laws of Florida and has its principal place of business in Orlando, Florida. Pursuant to § 1782, Operadora seeks an order authorizing the issuance of a subpoena directed to HRCI for "narrowly tailored discovery" relevant to the Arbitration. Operadora asserts that the primary issue in the Arbitration is which entity, between Hard Rock Limited and Operadora, owns the exclusive franchise rights for the "Hard Rock" brand in Mexico. Operadora asserts that it requires discovery from HRCI because "many of [its] communications and transa[c]tions regarding its franchise rights have been with HRCI," not Hard Rock Limited. (Doc. No. 1 p. 2.) Operadora further asserts that the arbitrator has no jurisdiction over HRCI and no authority to compel HRCI to produce documents relevant to the dispute. For these reasons, Operadora filed its § 1782 Application for discovery assistance, attaching its proposed subpoena, discovery request, and the International Chamber of Commerce Rules of Arbitration (the "ICC Rules").

On February 6, 2009, Judge Kelly granted the Application. (Doc. No. 2.) On February 24, 2009, HRCI filed a motion for reconsideration arguing that Judge Kelly lacked jurisdiction to enter the order and that the order was improvidently granted. (Doc. No. 3.) Also on

February 24, 2009, HRCI filed a motion to quash the subpoena authorized by Judge Kelly's February 6, 2009 order. (Doc. No. 4). On May 22, 2009, Judge Kelly granted the motion for reconsideration, vacated the prior order, quashed the subpoena that had been issued, and directed the clerk to reactivate the Application for the issuance of a Report and Recommendation ("R&R").[1] (Doc. No. 14.)

In his R&R, Judge Kelly construed HRCI's motion to quash as a response in opposition to the Application. (Doc. No. 16 p. 4.) Judge Kelly also considered Operadora's response to HRCI's motion to quash (Doc. No. 9) and HRCI's reply to Operadora's response (Doc. No. 12). (*Id.* at 7-11.) Judge Kelly then examined the relevant case law and recommended that the Court find that, under § 1782, the ICC Panel is a foreign or international tribunal. (*Id.* at 18.) Judge Kelly also recommended that the Court find that Operadora has also satisfied the other statutory requirements for the application of § 1782. (*Id.* at 17.) Finally, Judge Kelly recommended that the Court exercise its discretion to grant the Application. HRCI objected to Judge Kelly's R&R, arguing that the Court should find that the ICC Panel is not a foreign or international tribunal and that Judge Kelly did not properly determine whether the Court should exercise its discretion. (Doc. No. 17.) Opreadora responded to HRCI's objections, asserting that the Court should adopt Judge Kelly's R&R. (Doc. No. 22.)

## II. ANALYSIS

### A. Statutory Requirements of Section 1782

---

[1] Judge Kelly rejected HRCI's contention that a ruling on the Application would be a final, dispositive order, but granted the motion for reconsideration after finding that the Application was not within the blanket referral of Local Rule 6.01(c)(18). (Doc. No. 14 p. 11.)

*1. The Statute*

Section 1782 states, in pertinent part:

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
>
> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782. Thus, a district court may grant a § 1782 application if (1) the request is made by an interested person; (2) the request seeks evidence; (3) the evidence is for use in a proceeding in a foreign or international tribunal; and (4) the person from whom discovery is sought resides in the district of the district court ruling on the application. *In re Patricio Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007).

Operadora's Application clearly satisfies three of the four statutory requirements of § 1782. First, Operadora is an interested party because it is a party to the Arbitration. Second, Operadora's request seeks evidence related to the franchise agreements that is in HRCI's possession. Third, HRCI's principal place of business is located in the Middle District of Florida. The only statutory requirement in dispute is whether the ICC Panel is a foreign or international tribunal.

*2. Case Law*

The Eleventh Circuit has not addressed whether a private arbitral tribunal is a foreign or international tribunal under § 1782. The only circuits to have addressed this issue, the Fifth Circuit and Second Circuit, have held that a private arbitral tribunal is not a foreign or international tribunal under § 1782. *Nat'l Broad. Co. v. Bear Sterns & Co., Inc.*, 165 F.3d 184 (2d Cir. 1998) (hereinafter "*NBC*") (finding that a private arbitral proceeding in Mexico, conducted under the auspices of the ICC Court, is not a foreign or international tribunal under § 1782); *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880 (5th Cir. 1999) (finding that a private arbitral proceeding conducted under the auspices of the Stockholm Chamber of Commerce is not a foreign or international tribunal under § 1782).

In *NBC*, the Second Circuit found that the scope of the term "foreign or international tribunal" is ambiguous because it does not plainly include or exclude private arbitral tribunals. 165 F.3d at 188. The court found that "court cases, international treaties, congressional statements, academic writings, and even the *Commentaries* of Blackstone and Story . . . amply demonstrate[] that the term 'foreign or international tribunal[]' does not unambiguously *exclude* private arbitration panels." *Id.* However, the court also found that the breadth of the term does not "mandate a conclusion that the term, as used in § 1782," unambiguously *includes* private arbitral panels. *Id.*

Because the court found that the language of § 1782 is ambiguous regarding the inclusion or exclusion of private arbitral proceedings, it next examined the legislative history and purpose of the statute. *Id.* at 188-90. The court noted that the current version of § 1782, enacted in 1964, replaced the prior version of the statute, "which had provided limited

evidence-gathering assistance to a judicial proceeding in any *court* in a foreign country." *Id.* at 189 (citing H.R. Rep. No. 88-1052, at 9 (1963) (the "House Report") and S. Rep. No. 88-1580 (1964) (the "Senate Report")). The amended § 1782 replaced the former language limiting assistance to "judicial proceedings" in any "court" with more expansive language providing discovery assistance to "a proceeding in a foreign or international tribunal." *Id.* The court also observed that the term "international tribunal," as used in § 1782, derived from 22 U.S.C. §§ 270-270(g), which the 1964 amendments repealed. *Id.* The prior version of §§ 270-270(g) "authorized commissioners or members of international tribunals to administer oaths, to subpoena witnesses or records, and to charge contempt," but only in proceedings involving the United States. *Id.* at 189-90. The amended § 1782 broadened the scope of §§ 270-270(g) "by extending the reach of the surviving statute to intergovernmental tribunals not involving the United States." *Id.* at 190. However, the court found "no indication that Congress intended for the new provisions to reach private international tribunals, which lay far beyond the realm of the earlier statute." *Id.* The court reasoned that "[t]he absence of any reference to private dispute resolution proceedings such as arbitration strongly suggests that Congress did not consider them in drafting the statute." *Id.* at 189. Finally, the court found Congress' silence regarding private tribunals telling because "a significant congressional expansion of American judicial assistance to international arbitral panels created exclusively by private parties would not have been lightly undertaken by Congress without at least a mention of this legislative intention."[2] *Id.* at 190.

_____

[2] The court opined that an interpretation of § 1782 that includes private international arbitral tribunals would create a conflict between § 1782 and the Federal Arbitration Act ("FAA"), 9 U.S.C.

The court found that when Congress used the word "tribunal," it intended to refer to governmental entities. *Id.* at 189 ("[I]t is apparent in context that the authors of [the House and Senate Reports] had in mind only governmental entities, such as administrative or investigative courts, acting as state instrumentalities or with the authority of the state."). The court reasoned:

> The [House and Senate Reports], in explaining the choice of the word "tribunal," state that, "[f]or example, it is intended that the court have discretion to grant assistance when proceedings are pending before investigative magistrates in foreign countries . . . ." The new § 1782 would facilitate the collection of evidence for use "before a foreign administrative tribunal or quasi-judicial agency."

*Id.* (quoting the House and Senate Reports). Accordingly, the *NBC* court stated that "when Congress in 1964 enacted the modern version of § 1782, it intended to cover governmental or intergovernmental arbitral tribunals and conventional courts and other state-sponsored adjudicatory bodies." *Id.*

In *Biedermann*, the Fifth Circuit also held that a private arbitral proceeding is not a foreign or international tribunal under § 1782. 168 F.3d at 881. The court agreed with the *NBC* court, finding that the term "foreign or international tribunal" is ambiguous. *Id.* Although the court acknowledged Congress' intention to expand the scope of § 1782 when it added that term in 1964, it found "no contemporaneous evidence that Congress contemplated extending § 1782

---

§ 1 *et seq*., because "[t]he methods for obtaining evidence under [Section 7 of the FAA] are more limited than those under § 1782 in two, and possibly three, ways." *Id.* at 187. The court did not attempt to resolve this conflict because it found that § 1782 did not apply to private arbitral proceedings. *Id.*

to the then-novel arena of international commercial arbitration."[3]  *Id.* at 882.  The Court

reasoned:

> Empowering arbitrators or, worse, the parties, in private international disputes
> to seek ancillary discovery through the federal courts does not benefit the
> arbitration process.  Arbitration is intended as a speedy, economical, and
> effective means of dispute resolution. . . . [A]rbitration's principal advantages
> may be destroyed if the parties succumb to fighting over burdensome discovery
> requests far from the place of arbitration.  Moreover, as a creature of contract,
> both the substance and procedure for arbitration can be agreed upon in advance.
> . . . Resort to § 1782 in the teeth of such arguments suggests a party's attempt
> to manipulate United States court processes for tactical advantage.  Section
> 1782 need not be construed to demand a result that thwarts private international
> arbitration's greatest benefits.

*Id.* at 883.

In 2004, after the *NBC* and *Biedermann* decisions, the Supreme Court decided *Intel

Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), its seminal case on § 1782.  In

*Intel*, the applicant, Advanced Micro Devices, Inc., sought assistance under § 1782 for

discovery related to a proceeding it initiated against Intel Corporation before the Directorate-

General for Competition (DG-Competition) of the Commission of the European Communities

("European Commission").[4]  542 U.S. at 246.  The Supreme Court considered three questions

_____

[3] The court noted that "[r]eferences in the United States Code to 'arbitral tribunals' almost
uniformly concern an adjunct of a foreign government or international agency," not a private
commercial arbitration proceeding created by contract.  *Id.*

[4] The Court explained the relationship between the European Commission and the DG-
Competition as follows:

> The European Commission is the executive and administrative organ of the European
> Communities.  The [European] Commission exercises responsibility over the wide range
> of subject areas covered by the European Union treaty; those areas include the treaty
> provisions, and regulations thereunder, governing competition.  The DG-Competition,
> operating under the [European] Commission's aegis, is the European Union's primary

regarding the scope of § 1782: (1) whether a complainant before the European Commission is an "interested person" under § 1782; (2) whether a proceeding must be pending or imminent for an applicant to invoke § 1782; and (3) whether § 1782 contains a foreign-discoverability requirement.[5] *Id.* at 253. Finding that Congress did not include "categorical limitations . . . on the statute's reach," the Court stated that "[t]he statute authorizes, but does not require, a federal district court to provide assistance . . . in a . . . proceeding that leads to a dispositive ruling, *i.e.*, a final administrative action both responsive to the complaint and reviewable in court." *Id.* at 255. The Court then held that a complainant to the DG-Competition is an interested person, even if it is not a private litigant or sovereign agent, a proceeding need not be pending or even imminent to invoke § 1782, and § 1782 does not impose a foreign discoverability requirement. *Id.*

In reaching this holding, the Court first analyzed the history of § 1782. The Court stated that § 1782 "is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Id.* at 247. The Court stated that after revisions in 1948 and 1949, Congress created the Commission on International Rules of Judicial Procedure (the "International Rules Commission") to "investigate and study existing practices of judicial assistance and cooperation between the

_____

antitrust law enforcer.

*Id.* at 250.

[5] The Court addressed the foreign discoverability issue to resolve a circuit split on whether a § 1782 applicant must make a threshold showing that the evidence it seeks in the district court is discoverable in the foreign proceeding.

United States and foreign countries with a view to achieving improvements." *Id.* at 248 (internal quotation marks omitted). The Court further stated that, in 1964, "Congress unanimously adopted legislation proposed by the [International Rules Commission]," which "included a complete revision of § 1782." *Id.* Finally, the Court favorably cited the Ninth Circuit's statement that Congress enacted the revised § 1782 to achieve "twin aims of providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Id.* at 252 (citing *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002). *See also In re Malev Hungarian Airlines*, 964 F.2d 97, 99-100 (2d Cir. 1992) (quoting the Senate Report and Hans Smit, *International Litigation Under the United States Code*, 65 Colum. L. Rev. 1015, 1017-19 (1965) (hereinafter "*International Litigation*")).

Next, the Court examined the operation of the DG-Competition and the European Commission. The Court found that upon complaint or *sua sponte*, the DG-Competition conducts a preliminary investigation into alleged violations of the European Union's competition prescriptions, which "results in a formal written decision whether to pursue the complaint." *Id.* at 254. "If the DG-Competition declines to proceed, that decision is subject to judicial review by the Court of First Instance, and ultimately, by the court of last resort for European Union matters, the Court of Justice for the European Communities." *Id.* (internal quotation marks omitted). If the DG-Competition pursues the complaint, it initiates a process that concludes with a recommendation that the European Commission find the target has violated European competition law. *Id.* at 254-55. "Once the DG-Competition has made its recommendation, the European Commission may dismiss the complaint, or issue a decision

finding infringement and imposing penalties." *Id.* at 255 (internal quotation marks omitted). Any decision by the European Commission finding the target liable is subject to review in the Court of First Instance and the European Court of Justice. *Id.*

Finally, the Court considered the function of the DG-Competition and the European Commission, finding "no warrant to exclude the European Commission, to the extent that it acts as a first-instance decisionmaker, from § 1782(a)'s ambit." *Id.* at 258. The Court reasoned that Congress inserted the term " 'a proceeding in a foreign or international tribunal' . . . to provide the possibility of U.S. judicial assistance in connection with administrative and quasi-judicial proceedings abroad." *Id.* To support this proposition, the Court cited the Senate Report and two footnotes from a law review article authored by Professor Hans Smit, who served as the Reporter to the International Rules Commission. *Id.* (citing *International Litigation*, *supra*, at 1026-27 nn. 71, 73). The Court quoted the following language from the footnotes, "[T]he term 'tribunal' . . . includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." *Id.* The Court also reasoned that the European Commission is a tribunal under § 1782 because "[b]eyond question the reviewing authorities, both the Court of First Instance and the European Court of Justice, qualify as tribunals," and a complainant can only use evidence in those courts by submitting it to the European Commission. *Id.* at 257.

The *Intel* Court was not faced with–and did not address–the question of whether a private arbitral tribunal is a foreign or international tribunal under § 1782. Nonetheless, three district courts that have considered this issue after *Intel* have held that the Court's interpretation of § 1782 is sufficiently broad to include private arbitral tribunals. *See In re Babcock Borsig*

*AG*, 583 F. Supp. 2d 233 (D. Mass. 2008); *In re Hallmark Capital Corp.*, 534 F. Supp. 2d 951 (D. Minn. 2007); *In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221 (N.D. Ga. 2006). In *Roz Trading*, the district court for the Northern District of Georgia held that, in light of its common usage, the term "foreign or international tribunal" is unambiguous and includes private arbitral tribunals because "there is no clearly expressed legislative intent that the term 'tribunal' does not include [private] arbitral panels." 469 F. Supp. 2d at 1226. As support for this conclusion, the court relied, in part, on the Supreme Court's quotation of Professor Smit's *International Litigation* law review article. *Id.* at 1224 ("[T]he Supreme Court stated expressly, albeit in dicta: '[T]he term tribunal . . . includes . . . administrative and arbitral tribunals.' "). The court also found that the reasoning of *Intel* "demonstrates the structural and analytical flaws" of *NBC* and *Biedermann*. *Id.* Specifically, the court stated that *Intel* rejected the Second Circuit's and Fifth Circuit's categorical decisions that private arbitral tribunals are not covered under § 1782, instead holding that "the function of the body . . . makes it a 'tribunal,' not its formal identity as a 'governmental' or 'private' institution." *Id.* at 1228.

The *Roz Trading* court then examined the function of the private arbitration proceeding at issue in that case, the International Arbitral Centre of the Austrian Federal Economic Chamber in Vienna (the "Vienna Centre"). *Id.* at 1225. The court found that the Vienna Centre's arbitral panels are "constituted to hear disputes, weigh evidence, and issue rulings that will finally bind the parties in accordance with its Rules." *Id.* The court further found that "the [Vienna] Centre's orders are enforceable in Austrian courts."[6] *Id.* The court concluded that

---

[6] The *Roz Trading* court did not indicate whether § 1782 or the Supreme Court would or should distinguish between judicial reviewability and judicial enforceability.

under the functional analysis adopted by the Supreme Court in *Intel*, the Vienna Centre is a tribunal under § 1782.

In *Hallmark*, the district court for the District of Minnesota found that § 1782 authorized it to provide discovery assistance to an applicant who was a party to a private arbitration in Israel. 534 F. Supp. 2d 951. The court reasoned that *Intel*'s expansive interpretation of § 1782 "suggests that the Court would not restrict the scope of 'tribunal' to necessarily preclude assistance for use in private arbitrations." 534 F. Supp. 2d at 955. The court also cited favorably the reasoning of *Roz Trading* and relied on *Intel*'s citation to the "arbitral tribunal" language from Professor Smit's *International Litigation* article. *Id.* at 954-55. Similarly, in *Babcock*, the district court for the District of Massachusetts found that an arbitration proceeding under the ICC Court qualified as a tribunal under § 1782. 583 F. Supp. 2d at 240. The court reasoned that *Intel* refused to place categorical limitations on the availability of § 1782, concluding that "[t]he ICC [Court], like the European Commission, is a 'first-instance decisionmaker' that conducts proceedings which lead to [] dispositive ruling[s]." *Id.* at 238.

However, two district courts have found that *Intel* does not compel the conclusion that a private arbitral tribunal is a foreign or international tribunal under § 1782. *In re Arbitration in London, England*, No. 09-C-3092, 2009 WL 1664936 (N.D. Ill. June 15, 2009); *La Comision Ejecutiva Hidro-Elecctrica Del Rio Lempa v. El Paso Corp.*, No. H-08-335, 2008 WL 5070119 (S.D. Tex. Nov. 20, 2008). In *La Comision*, the district court for the Southern District of Texas found that a private arbitral tribunal was not a foreign or international tribunal under § 1782. The court opined that *Intel* "shed no light" on that issue because the quasi-adjudicative DG-

Competition at the center of *Intel* was "an animal of a very different stripe" than a private arbitral tribunal. *Id.* The court reasoned that the *Intel* holding was based, in part, on the Supreme Court's conclusion that the parties could seek *judicial review* of the European Commission's disposition of a complaint. *Id.* In contrast, the *La Comision* court found that a private arbitral proceeding "exists as a parallel source of decision-making to, and is entirely separate from, the judiciary."[7] *Id.* (internal quotation marks omitted).

Similarly, in *Arbitration in London*, the district court for the Northern District of Illinois refused to include a private arbitral tribunal within the scope of § 1782. 2009 WL 1664936. The court acknowledged that *Intel* emphasized Congress' intent to expand the scope of § 1782, but found that the Supreme Court "stopped short of declaring that *any* foreign body exercising adjudicatory power falls within the purview of the statute." *Id.* at *3. The court interpreted *Intel*'s "reference to 'arbitral tribunals' as including state-sponsored arbitral bodies but excluding purely private arbitrations." *Id.* The court reasoned that throughout the Supreme Court's analysis in *Intel*, it "emphasized the relevance of the ultimate reviewability of the DG[-]Competition's decisions by European courts to its conclusion that the DG[-]Competition itself fell within the purview of § 1782." *Id.* at *4 (citing *Intel*, 542 U.S. at 255, 257.) Drawing a distinction between the DG-Competition and a private arbitral proceeding, the *Arbitration in London* court noted, "[P]rivate arbitrations are generally considered alternatives to, rather than

---

[7] The *La Comision* court also noted that the "Supreme Court may yet be moved by the stronger gravitational pull of international comity, concomitant with international commerce, to apply § 1782 to arbitral tribunals." *Id.* at *5. The court continued, "[o]n the other hand . . . the Court may find it determinative that arbitration is intended as a speedy, economical, and effective means of dispute resolution, and thus, that extensive discovery through federal courts would harm, rather than benefit, international comity." *Id.*

precursors to, formal litigation. Indeed, it is common for arbitration provisions in private contracts to include a waiver of review by courts." *Id.* After finding that the parties' arbitration provision included a clause foreclosing meaningful judicial review, the court concluded that the private arbitral tribunal did not qualify as a "foreign or international tribunal" under § 1782.

*3. The R&R and HRCI's Objections*

After considering most of the above cases,[8] Judge Kelly recommended that this Court find that the tribunal is a foreign or international tribunal. (Doc. No. 16 p. 18.) Judge Kelly recommended that the Court find that the ICC Rules "cloak the arbitrator with the authority of a first-instance decisionmaker which will lead to a dispositive ruling on the merits of the dispute." (*Id.*) Judge Kelly reasoned that the *Roz Trading* and *Babcock* decisions are more consistent with *Intel* than the pre-*Intel* decisions in *NBC* and *Biedermann*. (*Id.*)

HRCI argues that Judge Kelly erred when he found that the ICC Panel is a foreign or international tribunal under § 1782. (Doc. No. 17 p. 1.) HRCI argues that *Intel* is inapplicable to this case because that decision did not concern private arbitration proceedings. (*Id.* at 3.) HRCI asserts that "there can be no analogy drawn between the [European] Commission in *Intel* and the ICC private arbitral panel in the present case that could serve as a basis for both being considered 'tribunals' under § 1782." (*Id.*) For example, HRCI argues that the decisions of the ICC Panel are not reviewable by "true judiciary powers," as are the decisions of the European Commission. (*Id.* at 4.) HRCI further argues that Judge Kelly erred when he assigned greater weight to the district court opinions in *Roz Trading* and *Babcock* than to the circuit court

---

[8] *Arbitration in London* was published several weeks after Judge Kelly entered his R&R.

opinions of the Second and Fifth Circuits, which remain good law. (*Id.* at p. 6-7.) Finally, HRCI argues that the Court should adopt the reasoning of *NBC*, *Biedermann*, *La Comision*, and *Arbitration in London* and conclude that the ICC Panel is not a foreign or international tribunal under § 1782.

Operadora argues that Judge Kelly's recommendations are sound. (Doc. No. 22 p. 2.) Operadora argues that *Intel* established a functional analysis that this Court should apply to resolve questions related to the scope of § 1782. (*Id.* at 4.) Operadora asserts that a functional analysis of the ICC Panel reveals that it is a foreign or international tribunal because it is a hearing before an independent officer, it has final decisionmaking authority, it gives the parties significant procedural rights, it issues a final dispositive ruling, and its decisions are reviewable by the ICC Court. (*Id.* at 6, 12.) Operadora also urges the Court to consider Professor Smit's recent scholarship on § 1782, which asserts, "Clearly private arbitral tribunals come within the term the drafters used." (*Id.* at 7 (citing Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Comm. 1, 5-7 (1998) (hereinafter *Assistance in Foreign Tribunals*).)[9] Finally, Operadora asserts that the Court should adopt the reasoning of *Roz Trading*, *Babcock*, and *Hallmark* and conclude that Judge Kelly's recommendation is sound. (*Id.* at 8-12.)

*4. Whether the ICC Panel is a Foreign or International Tribunal under § 1782*

a. Plain Language and Legislative History of § 1782

---

[9] Operadora further notes that Professor Smit "lamented 'regrettable' judicial decisions in which courts ruled that the term 'tribunal' did not include international arbitral tribunals." (*Id.*)

The Court finds that the plain language of § 1782 is ambiguous regarding whether a private arbitral proceeding is a foreign or international tribunal. For the reasons articulated in *NBC*, the Court finds that the term "foreign or international tribunal" is sufficiently broad that it could include private arbitral proceedings, but is not sufficiently precise to dictate such a conclusion. *See* 165 F.3d at 188. The Court also rejects the reasoning of other district courts, such as *Roz Trading*, which found that § 1782 is unambiguous. Specifically, *Roz Trading* found that § 1782 unambiguously includes both private and governmental arbitration proceedings because the language of the statute does not clearly express a "legislative intent that the term 'tribunal' does not include [private] arbitral panels." 469 F. Supp. 2d at 1226; *see Hallmark*, 534 F. Supp. 2d at 954 (citing *Roz Trading* for the proposition that if "Congress wanted to impose [a limitation on § 1782 excluding private arbitral proceedings], it would have been a simple matter to add the word 'governmental' before the word 'tribunal' in the 1964 amendment"). This reasoning is flawed. *Intel* indicates that Congress rejected categorical limitations on the scope of § 1782. *Intel*, 542 U.S. at 263 ("In light of the variety of foreign proceedings resistant to ready classification in domestic terms, Congress left unbounded by categorical rules the determination of whether a matter is proceeding 'in a foreign or international tribunal.' "). Although both *Roz Trading* and *Hallmark* purported to apply *Intel*'s rejection of categorical limitations, each paradoxically cited the absence of a categorical limitation as evidence of Congress' unambiguous intent to include private arbitration proceedings. A district court should not assign any significance to the absence of a categorical limitation in § 1782 because Congress chose not to include any categorical limitations in that statute. Thus, the Court finds that the language of § 1782 is ambiguous. Because the Court

finds that § 1782 is ambiguous, it will consider whether the legislative history and purpose of the statute indicate a Congressional intent to include private arbitral proceedings within the scope of the statute.

After considering the legislative history and purpose of § 1782, the Court finds that Congress did not clearly intend to include private arbitral proceedings within the ambit of "foreign or international tribunals." The Court agrees with the Second Circuit's conclusion that when Congress used the word "tribunal," it referred only to governmental entities. *NBC*, 165 F.3d at 189 (concluding that "it is apparent in context that the authors of [the House and Senate Reports] had in mind only governmental entities, such as administrative or investigative courts, acting as state instrumentalities or with the authority of the state"). Congress chose the word "tribunal" because it intended to give district courts discretion to grant discovery assistance in proceedings "pending before investigative magistrates in foreign countries," foreign administrative tribunals, and quasi-judicial agencies. *See id.* (quoting the House and Senate Reports). In addition, Congress salvaged the term "international tribunal" from the repealed §§ 270-270(g), which applied only to governmental and state-sponsored proceedings. *Id.* at 189-90. Moreover, the Senate Report cited a 1962 article by Professor Smit asserting that "an international tribunal owes both its existence and its powers to an international agreement," further suggesting that Congress did not contemplate private arbitral proceedings when it used that term.[10] *Id.* at 190; Hans Smit, *Assistance Rendered by the United States in Proceedings*

_____

[10] The Court acknowledges that in his more recent scholarship, Professor Smit has asserted that § 1782 should apply to private arbitrations. Hans Smit, *Assistance in Foreign Tribunals*, 25 Syracuse J. Int'l L. & Comm. at 5-7. However, the Court finds his contemporaneous scholarship more probative of Congress' intent because it was cited by the House and Senate Reports. Although

*Before International Tribunals*, 62 Colum. L. Rev. 1264, 1267 (1962).  Thus, the Court agrees

with the Second Circuit's conclusion that "[t]he absence of any reference to private dispute

resolution proceedings such as arbitration strongly suggests that Congress did not consider them

in drafting the statute."  *NBC*, 165 F.3d at 189.

b. Functional Analysis of § 1782

To their credit, Operadora does not urge and Judge Kelly does not recommend that this

Court adopt *Roz Trading*'s flawed inference that § 1782 unambiguously includes private

arbitral proceedings.  Instead, Operadora asserts that the Court must employ a functional

analysis using the criteria endorsed by *Intel* to determine whether the ICC Panel is a foreign or

international tribunal under § 1782.  Because neither the language of § 1782 or its legislative

history clearly indicates that it applies to private arbitral proceedings, the Court agrees with

Operadora that it must analyze the function of the ICC Panel.  Accordingly, the Court will

consider the criteria endorsed by *Intel* as well as other functional characteristics of the ICC

Panel to determine whether it is a foreign or international proceeding under § 1782.

The Court agrees with Operadora and Judge Kelly that the ICC Panel embodies some

of the attributes of a foreign or international tribunal identified by *Intel*.  For example, the ICC

Panel features an independent arbitrator who has the ability to gather evidence, the obligation

to apply impartially the law to the facts, and the authority to enter a binding decision.  However,

_____

Congress may weigh the costs and benefits of extending § 1782 to private arbitral proceedings and
determine that the purposes of the statute are best served by such an extension, this Court will not
weigh such a policy issue where it is plain that Congress did not do so when it enacted § 1782.  *See
La Comision*, 165 F.3d at *5 (noting the competing policy interests of extending § 1782 to private
arbitral proceedings).

despite these attributes, the Court concludes that other significant characteristics of the ICC Panel foreclose its classification as a foreign or international proceeding under § 1782. Specifically, the process for reviewing the decisions of the ICC Panel is starkly different than the judicial review inherent in the proceedings contemplated by Congress under § 1782 and recognized by the Supreme Court in *Intel*. In addition, the Court finds that the origin of the ICC Panel's decisionmaking authority is a functional characteristic that precludes the application of § 1782.

The review process for decisions of the ICC Panel does not satisfy the requirements of *Intel*. Specifically, as summarized above, *Intel* found that the European Commission is a foreign or international tribunal because it issues a final dispositive ruling, which the Supreme Court defined as "a final administrative action both responsive to the complaint and reviewable in court." 542 U.S. at 255. Throughout *Intel*, the Supreme Court indicated that judicial reviewability was a primary basis for finding that the European Commission is a foreign or international tribunal. *See, e.g.*, *id.* at 255 (". . . [T]he complainant has significant procedural rights. Most prominently, the complainant may submit to the DG-Competition information in support of its allegations, and may seek judicial review of the [European] Commission's disposition of a complaint."), 257 ("Beyond question the reviewing authorities, both the Court of First Instance and the European Court of Justice, qualify as tribunals."), 259 (finding that a proceeding need not be pending or imminent, the Court stated, "We hold that § 1782(a) requires only that a dispositive ruling by the [European] Commission, reviewable by the European courts, be within reasonable contemplation.").

In this case, although the decisions of the ICC Panel are final and binding on the parties, those decisions are not judicially reviewable. The ICC Rules dictate that the ICC Panel must submit its proposed award to the ICC Court, whose review is limited to "lay[ing] down modifications as to the form of the Award." (Doc. No. 1 Ex. B Art. 27 ("Scrutiny of the Award by the Court").) The ICC Court "may also draw [the ICC Panel's] attention to points of substance," but must do so "without affecting the [ICC Panel's] liberty of decision." (*Id.*) The ICC Rules do not provide for any review by a state-sponsored tribunal. Even if the ICC Court could affect the ICC Panel's substantive decision, this method of review would present a question similar to the one the Court is currently considering: Whether review by the private, contractually created organization that sponsored the ICC Panel constitutes "judicial review" as that term is used in *Intel*. Unlike the Court of First Instance and the European Court of Justice, it is not "beyond question" that the ICC Court is a tribunal under § 1782. Indeed, determining whether the ICC Court is a foreign tribunal under § 1782 potentially presents the same issues as determining whether the ICC Panel is a foreign tribunal under § 1782.

In addition, the Court believes that a functional analysis of the ICC Panel should also consider the origin of its decisionmaking authority and its purpose. That is, the criteria adopted by Supreme Court for its functional analysis in *Intel* were based, in part, on the particular characteristics of the DG-Competition and the European Commission. The Supreme Court did not consider whether additional criteria would be relevant if it were to consider a different kind of proceeding. For example, unlike the ICC Panel at issue in this case, the DG-Competition and European Commission were, without question, state-sponsored. Thus, the Supreme Court did not consider whether the source of the proceeding's authority to issue binding decisions or its

purpose are relevant criteria.  If it considered a proceeding such as the ICC Panel, the Supreme

Court may consider these criteria because they are unique and salient features of private arbitral

proceedings.  Accordingly, the Court will examine the source of the ICC Panel's authority and

its purpose.

The Court finds that the source of the ICC Panel's authority and its purpose are

functional attributes that militate against classifying it as a foreign or international proceeding

under § 1782.  The ICC Panel's authority derives from a private agreement between Operadora

and Hard Rock Limited to resolve all of their disputes through the ICC Court.  The parties

selected the ICC Court as an alternative to governmental or state-sponsored proceedings.  *See*

*Arbitration in London*, 2009 WL 1664936 at *4 (noting that "private arbitrations are generally

considered alternatives to, rather than precursors to, formal litigation").  Because the ICC

Panel's authority derives from the parties' agreement, its purpose is fundamentally different

than that of a governmental or state-sponsored proceeding.  *See NBC*, 165 F.3d at 190 (stating

that "the popularity of arbitration rests in considerable part on its asserted efficiency and cost-

effectiveness–characteristics said to be at odds with full-scale litigation in the courts") (citing

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995)); *Biedermann*, 168 F.3d at 883

(stating that "[a]rbitration is intended as a speedy, economical, and effective means of dispute

resolution"); *La Comision*, 2008 WL 5070119 at *4 (stating that private arbitral tribunals are

entirely separate from the judiciary).  In addition, Congress has long recognized the competing

purposes of private arbitrations and state-sponsored tribunals.  *See Allied-Bruce*, 513 U.S. at

270-71 (recounting the history of the FAA, including the "ancient" fight of English courts

against private arbitral proceedings, and concluding that the FAA's primary purpose was to

"overcome courts' refusals to enforce agreements to arbitrate" and to "place such agreements upon the same footing as other contracts").

Because the ICC Panel is the product of a private agreement to resolve disputes independently of state-sponsored tribunals, the Court finds that Congress and the Supreme Court would not casually extend § 1782 assistance to such a proceeding without some deliberation. Accordingly, the Court disagrees with the reasoning of the district courts in *Roz Trading*, *Babcock*, and *Hallmark* that the Supreme Court has embraced § 1782 assistance for private arbitral proceedings. First, the district courts' expansive interpretations of *Intel* relied primarily on the Supreme Court's inclusion of the phrase "arbitral tribunal" in a parenthetical quotation. The quotation is lifted from a footnote in Professor Smit's *International Litigation* article, which the Supreme Court cited merely to support the proposition that § 1782 applies to administrative and quasi-judicial proceedings. This Court is confident that the Supreme Court would not have expanded § 1782 to permit discovery assistance in private arbitral proceedings and reversed *NBC* and *Biedermann*–without even acknowledging their existence–in a parenthetical quotation supporting an unrelated proposition.[11] Second, the district courts' functional analyses relied primarily on evidence that the private arbitral tribunals issued binding decisions, without considering other relevant functional characteristics of such proceedings. For example, the district courts did not consider how each proceeding is created

---

[11] In addition, the quote from Professor Smit's article refers not to "arbitral tribunals" but to "administrative and arbitral tribunals," which is offset by commas on either side from "investigating magistrates" and "quasi-judicial agencies." The full context of the quote supports the *NBC* court's finding that § 1782 applies only to governmental and state-sponsored arbitral tribunals, not private arbitral tribunals.

or whether its authority to issue binding decisions is the result of private contract or domestic or international law. In contrast, *NBC* and *Biedermann* examined these fundamental differences in detail, finding that proceedings that are the product of contractual agreements to resolve disputes are functionally different than, and often opposed to, state-sponsored proceedings. *See, e.g. NBC*, 165 F.3d at 191 (noting that, in a private arbitral proceeding, a party's "tactical use of discovery devices" such as § 1782 may deprive the other party of "its bargained-for efficient process"). This Court agrees with the thorough analysis of *NBC* and *Biedermann* and concludes that the origin of the ICC Panel's authority and its purpose militate against classifying it as a foreign or international tribunal under § 1782.

Accordingly, after applying a functional analysis of the ICC Panel, the Court finds that it is not a foreign or international tribunal under § 1782. The decisions of the ICC Panel are not judicially reviewable under the criteria established by *Intel*. The ICC Court is itself a creature of contract and may only modify the form of the ICC Panel's award, not its substance. In addition, the ICC Panel is the product of the parties' contractual agreement and its authority to issue binding decisions arises from that contract. The Court finds that § 1782 does not authorize discovery relief in a proceeding such as the ICC Panel, which functions as a contractual alternative to state-sponsored courts, administrative agencies, arbitral tribunals, and quasi-judicial bodies. Thus, the Court is without authority to provide discovery assistance under § 1782. Operadora's Application is DENIED.

**B. Discretionary Considerations**

In *Intel*, the Supreme Court stated that a district court "is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel*, 542 U.S. at

264.  The Supreme Court then identified several factors a court should consider in exercising its discretion.  *Id.* at 264-65; *In re Clerici*, 481 F.3d at 1334.  Because the Court finds that it does not possess the statutory authority to grant the Application, it need not consider the discretionary factors.

## IV. CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1. Magistrate Judge Gregory J. Kelly's Report and Recommendation (Doc. No. 16), entered on May 28, 2009, is APPROVED IN PART and ADOPTED IN PART.  The Court approves and adopts Judge Kelly's recommendation that it find Hard Rock Cafe International, Inc.'s Motion to Quash (Doc. No. 4) moot.  However, the Court respectfully declines to approve and adopt Judge Kelly's recommendation that it grant in part and deny in part Operadora DB Mexico, S.A. DE C.V.'s Verified Application.

2. Respondent Hard Rock Café International, Inc.'s Objections to Magistrate Judge's Report and Recommendation (Doc. No. 17), filed on June 11, 2009, are SUSTAINED.

3. Respondent Hard Rock Café International, Inc.'s Motion to Quash (Doc. No. 4), filed on February 24, 2009, is MOOT.

4. Applicant Operadora DB Mexico, S.A. DE C.V.'s Verified Application for Order Directing Hard Rock Café to Respond to Discovery (Doc. No. 1) is DENIED.

5. The clerk shall close this case.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on August 1, 2009.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Party
Magistrate Judge Gregory J. Kelly